UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:23-CV-00154-RSE

**TAVION C.**                                                                  **PLAINTIFF**

**VS.**

**MARTIN O'MALLEY,**
*Commissioner of Social Security*[1]                                           **DEFENDANT**

**MEMORANDUM OPINION
AND ORDER**

The Commissioner of Social Security denied Claimant Tavion C.'s ("Claimant's") application for disability insurance benefits and supplemental security income benefits. Claimant presently seeks judicial review of the Commissioner's denial pursuant to 42 U.S.C. § 405(g). Both Claimant (DN 13; DN 14) and the Commissioner (DN 18) have filed a Fact and Law Summary. Claimant filed a reply. (DN 19). The Parties have consented, under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed. (DN 12).

I. Background

Tavion C. ("Claimant") applied for disability insurance benefits under Title II of the Social Security Act and supplemental security income benefits until Title XVI of the Social Security Act on April 14, 2021. (Transcript ("Tr.") 220, 223). The applications alleged Claimant's disability began on April 1, 2021 (*Id.*) due to rheumatoid arthritis, problems standing and walking, problems

---

[1] Martin O'Malley became the Commisoner of Social Security on December 20, 2023. Pursuant to Federal Rule of Civil Procedure 25(d), Martin O'Malley is substituted for Kilolo Kijakazi as Defendant in this case.

with both hands, injury to both ankles, and right knee problems (Tr. 250). Claimant's applications were denied at the initial and reconsideration levels. (Tr. 109-126).

At Claimant's request, Administrative Law Judge Candace McDaniel ("ALJ McDaniel") conducted a hearing in Louisville, Kentucky, on April 14, 2022. (Tr. 42). Claimant and his counsel appeared by telephone.[2] (Tr. 44). An impartial vocational expert also participated in the hearing. (*Id.*).

During the hearing, Claimant testified to the following. He is twenty-eight years old completed high school and attended two years of college. (Tr. 47). Claimant lives in a home with his wife and three children (ages eleven, six, and four). (Tr. 48). Though he has a driver's license and drives himself to work, he states his wife drives most of the time. (*Id.*). He has previously worked as a cashier, a line-cook, and a busser at various restaurants. (Tr. 49-52). Claimant stopped working full time because of pain in his body. But his employer, Texas Roadhouse, fashioned him a part-time position where he takes customer orders by phone while sitting. (Tr. 53-55). He currently works fifteen to eighteen hours a week in this position. (Tr. 56). Even with part-time hours, Claimant has difficulty doing the job because his "hands don't work" so "holding the phone, the computer, it's all painful." (Tr. 58). This pain stems from Claimant's arthritis and gout. (Tr. 59).

Claimant believes his arthritis started in 2013. (Tr. 59). He complains of swelling in his fingers and states he cannot make a closed fist. (*Id.*). He has had blood tests and x-rays on his hands but when asked if there is anything besides medication that can be done for his hands, Claimant responded "[n]o." (Tr. 60). Elaborating on his hand condition, Claimant says doctors can't pinpoint what he has exactly, that it is just labeled as rheumatoid arthritis for umbrella

---

[2] The hearing was conducted telephonically because of the COVID-19 pandemic. (Tr. 44).

reasons, but that it isn't detectable by tests. (*Id.*). Claimant states that doctors have tried many medications over the last four to five years but that none have seemed to work. (*Id.*).

In 2021, Claimant had surgeries on both heels and on his right knee. Because of constant swelling, Claimant elevates his feet at home several times a day. (Tr. 62-63). He uses a wheelchair at home but a cane when he leaves the house. (Tr. 63). He estimates he can stand about fifteen to twenty minutes before pain starts and can only walk twenty to twenty-five feet before needing to sit. (*Id.*). Taking care of himself is "kind of hard," but he manages showering and getting dressed independently. (Tr. 65). He can help with household chores for five or ten minutes but spends most of his time at home watching television. (Tr. 66).

ALJ McDaniel issued an unfavorable decision on May 10, 2022. (Tr. 27-36). She applied the Commissioner's five-step evaluation process for determining whether a claimant is disabled, 20 C.F.R. § 404.1520, and found as follows. First, Claimant has not engaged in substantial gainful activity since April 1, 2021, his alleged onset date. (Tr. 29). Second, Claimant has the severe impairments of bilateral osteoarthritis of the knees status post total knee replacements, bilateral calcaneal surgeries, and obesity. (Tr. 30). Third, none of Claimant's impairments or combination of impairments meets or medically equals the severity of a listed impairment from 20 C.F.R. Pt. 404, Subpt. P, App'x 1. Between steps three and four, ALJ McDaniel found Claimant has the residual functional capacity (RFC) to perform sedentary work with the following exceptions: he must avoid concentrated exposures to vibration, he can perform no work with exposure to hazards such as unprotected heights, and he must use a cane for ambulation. (Tr. 31). Fourth, Claimant cannot perform any of his past relevant work. (Tr. 34). Fifth and finally, considering Claimant's age, education, work experience and RFC, jobs exist is significant numbers in the national economy that he can perform. (*Id.*).

ALJ McDaniel concluded Claimant was not under a disability, as defined in the Social Security Act, from April 1, 2021 through May 10, 2022, the date of his decision. (Tr. 36). Claimant appealed ALJ McDaniel's decision. (Tr. 214-15). The Appeals Council declined review, finding Claimant's reasons for disagreement did not provide a basis for changing ALJ McDaniel's decision. (Tr. 12-14). At that point, the denial became the final decision of the Commissioner, and Claimant appealed to this Court. (DN 1).

## II. Standard of Review

Administrative Law Judges make determinations as to social security disability by undertaking the five-step sequential evaluation process mandated by the regulations. *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 803-04 (6th Cir. 2008) (citing *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990)); 20 C.F.R. §§ 404.1520(b), 416.920(b). Throughout this process, the claimant bears the overall burden of establishing they are disabled; however, the Commissioner bears the burden of establishing the claimant can perform other work existing in significant numbers in the national economy. *Id.* at 804 (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004)).

When reviewing the Administrative Law Judge's decision to deny disability benefits, the Court may "not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). Instead, the Court's review of the Administrative Law Judge's decision is limited to an inquiry as to whether the Administrative Law Judge's findings were supported by substantial evidence, 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (citations omitted), and whether the Administrative Law Judge employed the proper legal standards in reaching his conclusion. *See Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th

Cir. 1986). Substantial evidence exists "when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993). The Supreme Court has clarified "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high[.]" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted).

III. Analysis

Claimant challenges ALJ McDaniel's step-two finding that his inflammatory arthritis was not a severe medically determinable impairment. (DN 13, at PageID # 1009). Step two of the sequential evaluation process requires the claimant to establish the existence of a severe, medically determinable impairment that meets the twelve-month durational requirement. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). A medically determinable impairment is an impairment that "result[s] from anatomical, physiological or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1521. Medically determinable impairments "must be established by objective medical evidence from an acceptable medical source." *Id.* The claimant's statement of symptoms, a diagnosis, or a medical opinion will not establish the existence of a medically determinable impairment. *Id.* The regulations define "severe impairment" as "any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities," 20 C.F.R. §§ 404.1520(c), 416.920(c), and which lasts or can be expected to last "for a continuous period of not less than 12 months," 20 C.F.R. §§ 404.1509, 416.909.

At step two, ALJ McDaniel determined Claimant had several severe impairments: bilateral osteoarthritis of the knee's status post total knee replacements, bilateral calcaneal surgeries, and obesity. (Tr. 30). However, ALJ McDaniel did not find that Claimant's allegations of hand pain

5

and nodules were severe medically determinable impairments. (*Id.*). To support this conclusion, ALJ McDaniel provided the following analysis:

> The claimant reports that he has some pain and difficulty using his hands. The record reflects that the claimant has developed nodules on the hands (Exhibits 3F pages 27 and 29 and 4F page 8). The nodules however appear to be benign; physical examinations of the hands are within normal limits with no parathesis, or numbness noted (Exhibits 9F, 10F page 4 and 15F page 12). While the claimant has nodules on the hands, there is insufficient objective evidence to clinically correlate this condition to a medically determinable impairment or to any work-related functional limitations on the use of the hands. The claimant was tested for rheumatoid arthritis but was negative for the RA factor (Exhibit 3F). The claimant's allegations of pain and nodules are not severe medically determinable impairments.

(*Id.*).

Claimant argues the ALJ erred by failing to find his inflammatory arthritis was a medically determinable impairment. (DN 13, at PageID # 1011). Claimant specifically finds error in ALJ McDaniel's statement that examinations of his hands were within normal limits because the records the ALJ relies on largely included no evaluation of Claimant's hands. (*Id.*). Claimant believes ALJ McDaniel impermissibly "played doctor" by dismissing Dr. Moore's correlation of his inflammatory arthritis to the appearance of his hand nodules and by dismissing Claimant's seronegative oligoarthritis as a medically determinable impairment based on his negative RF factor test. (*Id.* at PageID # 1012). In addition to his hand nodules, Claimant emphasizes evidence, including x-rays, consistently showing the swelling on his hand joints that ALJ McDaniel allegedly did not consider. (*Id.* at PageID # 1013 (citing Tr. 387-88, 400-01, 404-05, 409-10, 416, 699, 700, 876)). He likewise highlights his repeated complaints of joint pain and swelling in his hands, and his wife's testimony that he cannot grasp things. (*Id.* (citing Tr. 58-59, 283, 387, 400, 404, 409, 699)). Claimant further asserts that ALJ McDaniel's statement that Plaintiff testified to receiving no treatment for any conditions related to his hands is patently incorrect and that he, in fact, testified he has tried multiple different medications for his hands and nothing has worked. (*Id.*).

6

ALJ McDaniel's errors at step two, Claimant explains, led to her related failure to assess any corresponding RFC limitations. (*Id.* at PageID # 1014). Claimant believes that given the combination of x-ray results and physical examinations indicating the presence of persistent swelling, as well as his own testimony, "it is reasonable that he would be limited to only occasional handling and/or fingering." (*Id.*). Such limitation on handling and fingering would render him unable to perform the three jobs identified by the vocational expert that ALJ McDaniel relied upon in her RFC, according to Claimant. (*Id.*).

The Commissioner argues Claimant has failed to meet his burden of not only showing that he had medically determinable and severe impairments, including inflammatory arthritis but also showing that the evidence demanded additional limitations in the RFC to accommodate his impairments. (DN 18, at PageID # 1034-35). Regarding the ALJ's step-two analysis, the Commissioner explains ALJ McDaniel fairly considered the evidence regarding Claimant's hands and did not substitute her lay opinion for that of Dr. Moore by not finding seronegative oligoarthritis was a medically determinable impairment. (*Id.* at PageID # 1035-36). The mere diagnosis of a condition in a medical record, the Commissioner clarifies, does not establish a medically determinable impairment. (*Id.* at PageID # 1036-37). The Commissioner asserts that Claimant is asking the Court to reweigh the evidence in the case, which is impermissible. (*Id.* at PageID # 1038-41) The Commissioner also disagrees with Claimant's assertions that ALJ McDaniel mischaracterized his testimony and that ALJ McDaniel impermissibly played doctor. (*Id.*). Because ALJ McDaniel sufficiently considered the evidence related to Claimant's alleged hand impairments at step two and because her decision is consistent with applicable legal authority, the Commissioner maintains no reversible error occurred. (*Id.* at PageID # 1043-44).

In reply, Claimant again takes issue with ALJ McDaniel's failure to discuss his inflammatory arthritis after step two of the sequential evaluation. (DN 19, at PageID # 1048). ALJ McDaniel's evaluation of Claimant's inflammatory arthritis did not build an accurate and logical bridge between the evidence and the result, according to Claimant. (*Id.* at PageID # 1048-49). Additionally, Claimant again argues that medically acceptable clinical and laboratory diagnostic techniques, including Dr. Moore's observations of the nodules on Claimant's hands and swelling of multiple PIP joints, establish Claimant's inflammatory arthritis as a severe medically determinable impairment. (*Id.* at PageID # 1049).

As an initial matter, it is unclear whether ALJ McDaniel determined that Claimant's arthritis of the hands was a non-severe medically determinable impairment or not a medically determinable impairment at all. In evaluating Claimant's hand impairments, ALJ McDaniel stated that "there is insufficient objective evidence to clinically correlate this condition to a medically determinable impairment or to any work-related functional limitations on the use of hands." (Tr. 30). This statement implies ALJ McDaniel did not believe Claimant's hand impairments, whether arthritis or otherwise, were a medically determinable impairment. However, ALJ McDaniel concludes her step-two analysis of Claimant's hand impairments by stating: "[t]he claimant's allegations of pain and nodules are not severe medically determinable impairments." (*Id.*). This later statement implies that ALJ McDaniel believed Claimant's hand impairment was a medically determinable impairment, but that it did not meet the severity requirement.

The uncertainty of ALJ McDaniel's conclusion at step two matters when reviewing Claimant's case. The Sixth Circuit construes the claimant's step-two burden as "a *de minimis* hurdle in the disability determination process." *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988). An impairment is only considered not severe "if it is a slight abnormality that minimally affects

work ability regardless of age, education, and experience." *Id.* at 862. This step is meant to be "an administrative convenience to screen out claims that are 'totally groundless' solely from a medical standpoint." *Id.* at 863 (quoting *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 90 n.1 (6th Cir. 1985)). Accordingly, Sixth Circuit precedent establishes that an ALJ's failure to find an impairment severe at step two is not reversible error, so long as the ALJ found another impairment was severe and thus continued with the five-step evaluation. *See Fink v. Astrue*, 253 F. App'x 580, 584 (6th Cir. 2007); *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008). In other words, where a claimant establishes at least one severe medically determinable impairment, the ALJ must consider the limiting effects of all a claimant's impairments, severe or not, when assessing the claimant's residual functional capacity determination. 20 C.F.R §§ 404.1523, 416.923.

On the other hand, an ALJ is not required to consider impairments that are not medically determinable when assessing a claimant's RFC. *See Durbin v. Comm'r of Soc. Sec.* No. 2:17-cv-896, 2020 WL 2744100, at *13 (S.D. Ohio May 27, 2020); *Robinson v. Comm'r of Soc. Sec.*, No. 17-cv-12202, 2018 WL 2437560, at *11-12 (E.D. Mich. May 8, 2018) ("There exists no analogous requirement for the ALJ to account for non-medically determinable impairments past step two[.]"). Thus, when a claimant challenges an ALJ's determination that a given impairment is not a medically determinable impairment, the harmless error rule described above does not necessarily apply. *See Durbin*, 2020 WL 2744100, at *13 ("even though an ALJ's severity error may be harmless . . . an error in an ALJ's medically determinable analysis is not, at least in this case, where the ALJ did not indicate that he considered plaintiff's fibromyalgia when he assessed her RFC at step four."). As another district court has noted, the distinction between an ALJ's determination of an impairment being non-severe and an ALJ's determination of an impairment being non-medically determinable "is significant because an ALJ may credit a claimant's statements about

9

her symptoms and functional limitations only if the impairment to which they relate is medically determinable." *Santiago v. Saul*, No. 3:19cv1026 (MPS), 2020 WL 5511651, at *2 (D. Conn. Sept. 14, 2020) (citing *Cooper v. Comm'r of Soc. Sec.*, NO. 17CV1058, 2019 WL 1109573, at *5 (W.D.N.Y. Mar. 11, 2019) (where ALJ's finding that plaintiff's condition was not a medically determinable impairment was not supported by substantial evidence, harmless error analysis did not apply, and remand was warranted)).

The ALJ's failure to clarify his step-two conclusion regarding Claimant's hand impairments impedes this Court's review. *See, e.g., Borger v. Comm'r of Soc. Sec.*, No. 3:20-CV-01930-JGC, 2021 WL 6297536, at *13 (N.D. Ohio Dec. 17, 2021) (where ALJ failed to clearly state whether an impairment was medically determinable but not severe, court determined it could not properly review the ALJ's decision and recommended remand). While the Court finds this ambiguity alone sufficient to warrant remand, the Court further finds remand would be necessary under either interpretation of the ALJ's step-two conclusion as to Claimant's hand impairments.

If ALJ McDaniel meant to the find that Claimant's hand impairments were non-severe and not medically determinable, his determination is not supported by substantial evidence in the record and reversible error results. Again, a medically determinable impairment arises from anatomical, physiological or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1521. In stating that insufficient evidence existed to clinically correlate Claimant's hand impairments to a medically determinable impairment, ALJ McDaniel failed to consider a significant amount of relevant, objective medical evidence.

This omitted evidence includes records from Dr. Moore, Claimant's rheumatologist, who treated Claimant's seronegative oligoarthritis from at least May 15, 2020 to July 9, 2021. Dr.

Moore repeatedly found Claimant had swelling of the PIP (proximal interphalangeal) joints in his hands on physical musculoskeletal examination. (Tr. 388 (swelling in 3/4 PIPs); Tr. 400 (swelling in 3/4 PIPs left); Tr. 403 (left third PIP swelling); Tr. 410 (swelling in left middle PIP, right 3/4 PIP, nodules on PIPs); Tr. 700 (thickening bilateral middle PIPs)). In addition, ALJ McDaniel did not consider Dr. Moore's assessment on May 15, 2020 that "now with worsening of [Claimant's] hands and new nodules, it looks like [Claimant] is evolving into more of a classic [Rheumatoid Arthritis] phenotype." (Tr. 411). Though ALJ McDaniel mentioned Claimant's hand nodules, he never discussed the consistent physical examinations revealing swelling of Claimant's PIP joints.[3]

ALJ McDaniel further omitted any discussion of the evaluation Claimant underwent for inflammatory arthritis in April of 2021.[4] (Tr. 415-21). The evaluation consisted of three x-rays of Claimant's right and left hands and revealed "multifocal periarticular soft tissue swelling most pronounced on the left-fourth PIP, second MCP [metacarpophalangeal joint], right third and fifth PIP, and right fifth MCP." (*Id.*). The physician reviewing and interpreting the report noted the following impression: "multifocal periarticular soft tissue swelling synovitis with mixed erosive/productive changes primarily in the PIP/MCP distribution likely due to involvement by clinical history of seronegative spondyloarthropathy." (*Id.*).

Failing to consider this objective medical evidence from an acceptable source cannot be considered harmless error.[5] This error impacted subsequent steps of the disability process because

---

[3] Though ALJ McDaniel cited to Exhibit 3F, Claimant's visit with Dr. Moore on May 15, 2020, as evidence that Claimant developed nodules on the hands, he only referenced pages 27 and 29, which do not include Dr. Moore's observations on physical exam. (*See* Tr. 409-411).
[4] Again, ALJ McDaniel broadly cited to Exhibit 3F in his step-two analysis of Claimant's hand impairments but did not mention the x-rays that were ordered or their results.
[5] While a diagnosis or a claimant's subjective complaints cannot alone establish a medically determinable impairment, the regulations do not forbid that such information be considered in combination with objective medical evidence from an acceptable medical source. The record is replete with diagnoses from medical sources that Claimant suffers from various forms of arthritis in his hands and with Claimant's subjective statements as to the pain he experiences due to this arthritis. (*See, e.g.,* Tr. 464 (diagnosis of "rheumatoid arthritis of multiple sites"); Tr. 468 ("patient is seen for follow up for seronegative oligoarthritis); Tr. 488 (diagnoses of rheumatoid arthritis of multiple sites with negative

11

once finding the impairment not medically determinable, ALJ McDaniel was not required to consider the impairment in considering functional limitations attributable to Claimant's hand impairments in weighing Claimant's credibility, the medical source opinions, and in overall determining the RFC. Such consideration reasonably could have altered ALJ McDaniel's conclusions and impacted her ultimate determination of disability.

If ALJ McDaniel meant to classify Claimant's arthritis/hand impairment as a non-severe medically determinable impairment, the analysis differs but reversible error still results. When an ALJ finds at least one impairment to be severe at step two, they must consider the limiting effects of all impairments, severe and non-severe, in forming the claimant's RFC. *See White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 787 (6th Cir. 2009). ALJ McDaniel did not sufficiently discuss Claimant's arthritis/hand impairment in her decision after step two. In her RFC analysis, ALJ McDaniel only mentioned Claimant's hand impairments while briefly recounting Claimant's subjective statements. (Tr. 30). There, ALJ McDaniel noted Claimant's reports that handling bottles and using a computer at work "are painful due to arthritis and gout, but he says he has not sought or received treatment for any conditions related to his hands." (Tr. 32). Two problems stem from this reference.

First, ALJ McDaniel's statement does not accurately summarize Claimant's testimony. During the hearing, ALJ McDaniel inquired as to whether anything else beyond medication could be done for his hands at this point. (Tr. 60). Claimant responded "no" but elaborated that he has tried different medications for four or five years and nothing has seemed to work. (*Id.*). Claimant

---

rheumatoid factor and psoriatic arthritis); Tr. 492 ("patient is seen in follow up for HLAB27+ oligoarthritis", reports of widespread pain and swelling); Tr. 513 ("arthritis – overall worse"); Tr. 532 (chief complaint of joint pain, visit diagnoses of arthritis, psoriatic arthritis, chronic gouty arthropathy with tophi); Tr. 537 ("all joints hurt currently"); Tr. 539 (assessment – "arthritis – refractory disease, active synovitis on exam today"); Tr. 557 (visit diagnosis: arthritis)).

also testified to doctors performing blood tests, x-rays and "anything you can think of" related to his hands. (*Id.*). Based on this testimony, the Court finds ALJ McDaniel misconstrued Claimant's testimony as to the treatment he has sought or received for his hands. ALJ McDaniel's characterization makes it seem like Claimant has never sought treatment for his hands, which is contrary to Claimant's explanation that he has tried many medications and has undergone many tests over the years with no success.

Second, by only providing an inaccurate single-sentence summation of Claimant's subjective testimony relating to his hand impairments, ALJ McDaniel failed to consider the limiting effects of all of Claimant's impairments, severe and non-severe, in her RFC determination. As Claimant points out, ALJ McDaniel failed to discuss any objective evidence related to his hand impairments, including Dr. Moore's consistent findings on physical examination of swelling of Claimant's PIP joints. (Tr. 388, 400, 403, 410, 700). ALJ McDaniel additionally failed to consider the x-ray evaluation Claimant underwent for inflammatory arthritis in April of 2021, finding "[m]ultifocal periarticular soft tissue swelling most pronounced on the left-fourth PIP, second MCP [metacarpophalangeal joint], right third and fifth PIP, and right fifth MCP." (Tr. 415-21).

Based on this significant objective evidence, ALJ McDaniel's failure to further discuss Claimant's hand impairments in her RFC determination after finding them to be non-severe at step two is not supported by substantial evidence in the record.[6] In so concluding, the Court is not reweighing the evidence, as the Commissioner contends. Had ALJ McDaniel properly discussed

---

[6] While Claimant's ability to satisfy a listing from Appendix 1 is not at issue in this appeal, the language from Listing 14.09, governing Inflammatory Arthritis, is useful. Section A of Listing 14.09 requires proof of persistent inflammation or persistent deformity of: "[o]ne or more major peripheral joints in each upper extremity resulting in the inability to perform fine and gross movements effectively." 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 1409(A). Dr. Moore's objective findings on physical exam, along with Claimant's evaluation for inflammatory arthritis in April of 2021, include information highly relevant to an evaluation of inflammatory arthritis. Though ALJ McDaniel's step-two analysis discussed the nodules on Claimant's hands, she completely omitted discussion of Dr. Moore's persistent objective findings of swelling in Claimant's PIP joints, which is relevant to analyzing inflammatory arthritis.

this omitted evidence at step two and in her RFC, as required by the regulations, her RFC conclusion may have included additional restrictions relating to Claimant's ability to handle and finger objects and may have changed the ultimate determination that Claimant was not disabled. The Court notes that ALJ McDaniel's RFC determination already seriously limits Claimant to sedentary work with use of a cane and any additional supported restriction could be outcome determinative.

For these reasons, the Court finds ALJ's step-two analysis of Claimant's arthritis and hand impairments is reversible error and the case must be remanded for additional consideration.

ORDER

**IT IS THEREFORE ORDERED** that the final decision of the Commissioner be **REVERSED** and this matter be **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g), to the Commissioner for reconsideration with instructions to conduct additional proceedings to remedy the herein identified defects from the original proceedings. A separate judgment will be entered.

Copies:　　　　Counsel of Record